HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID DOUGLAS SPEIDEL,

                Plaintiff,

       v.

DILLON PACKARD, TERRANCE
CLIFFORD, JOSHUA SHOLTEN,
DELMAS FERRELL, TYLER
HATCHER, CHAD PLEADWELL,
CRYSTAL CHAPPELL,
REBECCA WELCH, JULIE
WALTERS, LEAH OTT, DAVE
FLOYD, MATT MILLER, DARCY
SWETNAM, RYAN WALTERS,
CHRISTINE CLELAND-
MCGRATH, TJ FANTINI,
AMANDA HUBIK, BRUCE
MCDOUGALL, CAROLYN
MOULTON, ANTHONY YOUNG,
SARAH HAYNE, PATRICK
EASON, PAUL NIELSEN,
TIFFANY AMBROSE, and JAY
DEE WAGNER,

                Defendants.

Case No.  2:25-cv-00667-RAJ

ORDER

1

## I.    INTRODUCTION

THIS MATTER comes before the Court on the City Defendants' motion to dismiss, Dkt. # 29, the Judicial Officers' motion to dismiss, Dkt. # 30, and Plaintiff David Speidel's motion to appoint counsel, Dkt. # 36.  The Court has reviewed the motions, the submissions in support of and in opposition to the motions, and the balance of the record.  For the reasons set forth below, the Court **DENIES** Mr. Speidel's motion to appoint counsel.  The Court **GRANTS** the City Defendants' and Judicial Officers' motions to dismiss.  In addition, the Court, *sua sponte*, **DISMISSES** the claims against Defendant Jay Dee Wagner.

## II.    BACKGROUND

Plaintiff David Speidel, proceeding *pro se*, alleges that 25 defendants engaged in a vast conspiracy to deprive him of his civil rights.  The defendants can be categorized into three groups: (1) the "City Defendants," comprised of Anacortes police officers, public defenders, prosecutors, court staff, city officials, and a city claims adjuster; (2) the "Judicial Officers," comprised of Judge Nielsen, Commissioner Eason, and Commissioner Hayne; and (3) Jay Dee Wagner, an unrepresented individual.  For the reasons discussed below, the Court finds Mr. Speidel's claims against Commissioners Eason and Hayne are barred by the *Rooker-Feldman* doctrine, and that he fails to state a claim against the remaining defendants.

### A.    Allegations Against Wagner and the City Defendants

On February 27, 2024, Wagner reported that Mr. Speidel was operating a motorcycle without proper registration. Dkt. # 1 at 14, 15.  At approximately 9:05 p.m., Officer Packard from the Anacortes Police Department was dispatched to investigate the complaint, and upon arriving at the scene, observed Mr. Speidel dismount a motorcycle and enter a nearby apartment. *Id.* at 15.  Officer Packard attempted to speak with Mr.

Speidel, but Mr. Spediel refused.  *Id.*  At some point, Sergeant Clifford joined Officer Packard.  *Id.*  Mr. Speidel alleges that together, the two officers "engaged in unlawful and coercive behavior, including persistent knocking, attempting to coerce a child into opening the door, and peering through windows," and that the officers "remained on the premises for approximately two hours."  *Id.*  He also alleges four other police officers—Delmas Farrell, Chad Pleadwell, Joshua Sholten, and Tyler Hatcher—"[p]articipated in illegal search/seizure and coercive tactics" or were "[c]omplicit in police practices."  *Id.* at 11.  It is unclear if these other officers interacted with Mr. Speidel or were at the scene at all  *Id.*  Ultimately, after unsuccessfully attempting to speak with Mr. Speidel, Officer Packard and Sergeant Clifford towed Mr. Speidel's motorcycle, issued two traffic citations, and filed charges for criminal obstruction.  *Id.* at 15.

Mr. Speidel appeared for a court hearing on October 24, 2024.  *Id.*  Mr. Speidel alleges that at the hearing, his public defender "exhibited conduct suggesting an active conflict of interest" and that he later learned the public defender was "transitioning to a prosecutorial role in a neighboring county."  *Id.*  Further, he alleges the recording of this October 24 hearing was "altered," that the court clerk potentially took part in the tampering, and a prosecutor and multiple public defenders failed to take action to correct the discrepancy.  *Id.* at 15–16.

Mr. Speidel alleges he contacted a litany of individuals about the events described above, including the Anacortes mayor, chief of police, city attorney, several city council members, and other city staff.  *Id.*  at 16.  None responded to his complaint.  *Id.*

Finally, Mr. Speidel filed a claim with the Anacortes claims adjuster, Tiffany Ambrose.  *Id.* at 13.  Mr. Speidel alleges she "summarily denied the claim based solely on the officers' narrative and refused to acknowledge or investigate misconduct."  *Id.*

"Her actions may demonstrate bad faith claims handling and further evidence systemic denial of redress, contributing to ongoing harm." *Id.*

As a result of these allegations, Mr. Speidel named all individuals described above as defendants in this case. He asserts against them claims under 42 U.S.C. § 1983 for violations of the First Amendment, Fourth Amendment, Sixth Amendment, Fourteenth Amendment and under 42 U.S.C. § 1985 for civil conspiracy. *Id.* at 14. He seeks relief including $33 million in damages, injunctive and declaratory relief, and removal of all named officials from office. *Id.* at 17.

**B.    Allegations Against the Judicial Officers**

Mr. Speidel also brings the same claims against the Judicial Officers. *Id.* In describing the allegations against the Judicial Officers, the Court takes judicial notice of documents filed in Mr. Speidel's Skagit County Superior Court case. *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record . . . including documents on file in federal or state courts.").

Commissioner Hayne presided over Mr. Speidel's traffic infraction case in Anacortes Municipal Court. Dkt. # 34 at 11. On July 25, 2024, she denied Mr. Speidel's motion to suppress evidence and found Mr. Speidel committed two traffic infractions. *Id.*[1] Mr. Speidel appealed the decision, which the Skagit County Superior Court denied on February 14, 2025. Dkt. # 34 at 23. In his complaint, Mr. Speidel alleges Commissioner Hayne failed "to respond to requests for hearing and due process oversight." Dkt. # 1 at 12.

---

[1] The criminal obstruction charge against Mr. Speidel was apparently dismissed at some point. Dkt. # 30 at 5.

ORDER - 4

It is unclear from the complaint and the judicially noticed documents how Commissioner Eason and Judge Nielsen were involved with Mr. Speidel's case or how they otherwise interacted with him. Dkt. # 30 at 2. Mr. Speidel's only allegation against Commissioner Eason is that he engaged in "complicity or indifference in review of suppression motions." Dkt. # 1 at 12. As to Judge Nielsen, Mr. Speidel appears to allege he engaged in misconduct during a past court proceeding in 2021, including editing the court record from that proceeding. *Id.* at 13. Mr. Speidel alleges Judge Nielsen's past actions "suggest a coordinated effort to undermine a defendant's right to a fair trial" and "indicate participation in a civil conspiracy to deprive citizens of their constitutional rights." *Id.*

### C.    Procedural History

On April 14, 2025, Mr. Speidel filed his original complaint. Dkt. # 1. On April 24, 2025, the City Defendants filed a motion to dismiss. Dkt. # 29. On May 6, 2025, the Judicial Officers also filed a motion to dismiss. Dkt. # 30. Mr. Speidel did not file an opposition to either motion, but on May 22, 2025, he filed an amended complaint and a motion to appoint counsel. Dkts. # 35, 36. On June 2, 2025, the Judicial Officers filed a response to the new filings, in which they indicated they intend to stand on the arguments made in their motion to dismiss the original complaint. Dkt. # 37. The City Defendants filed a joinder to that response. Dkt. # 38.

Wagner, the individual who initially reported Mr. Speidel's traffic violation to the police, is the sole unrepresented defendant in this case. Mr. Speidel has not filed a certificate confirming he served Wagner, and Wagner has not filed any documents in this case.

ORDER - 5

# III.    DISCUSSION

## A.    Motion to Appoint Counsel

Mr. Speidel seeks appointment of counsel under 28 U.S.C. § 1915(e)(1).  Dkt. # 36.  Under that statute, the "court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  The statute applies only to individuals proceeding *in forma pauperis*.  *See Chan v. Ryan*, No. 22-cv-1796, 2023 WL 197429, at *1 (W.D. Wash. Jan. 17, 2023).  The decision to appoint counsel is within "the sound discretion of the trial court and is granted only in exceptional circumstances."  *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984)).  A finding of exceptional circumstances "requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims 'in light of the complexity of the legal issues involved.'"  *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Mr. Speidel does not qualify for appointment of counsel under 28 U.S.C. § 1915(e)(1) because he paid his filing fee and is therefore not proceeding *in forma pauperis*.  Moreover, the Court, in its discretion, finds there are no exceptional circumstances supporting appointment of counsel.  For the reasons discussed below, at this juncture, it does not appear Mr. Speidel is likely to succeed on the merits of his claims.  Moreover, the core of his allegations is not unusually complex, and he has demonstrated an ability to sufficiently articulate them.

## B.    City Defendants' Motion to Dismiss

The Court next turns to the City Defendants' motion to dismiss.  As a threshold matter, the Court addresses the impact of Mr. Speidel's amended complaint, filed after the City Defendants' and Judicial Officers' motions to dismiss.  In light of the leniency

afforded to *pro se* litigants, the Court is not inclined to disregard the amended complaint based on arguments that Mr. Speidel filed the amended complaint too late, without leave to amend, and without complying with local rule requirements. In addition, while an amended complaint typically replaces the original complaint, the Court notes Mr. Speidel's amended complaint contains significantly less detail than his original complaint, and is therefore even less likely to survive a motion to dismiss. Again, in light of the leniency afforded to *pro se* litigants, the Court will construe the complaint and amended complaint as a single document for purposes of analyzing the pending motions to dismiss.

To survive a motion to dismiss, a plaintiff must point to factual allegations in the complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a motion to dismiss, courts "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). "Conclusory allegations and unreasonable inferences, however, are insufficient to defeat a motion to dismiss." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### 1.    Claims Against Officer Packard and Sergeant Clifford

Mr. Speidel appears to assert only claims based on Fourth Amendment violations against Officer Packard and Sergeant Clifford. Dkt. # 1 at 14. The City Defendants argue these claims should be dismissed because (1) the officers did not seize Mr. Speidel; (2) Mr. Speidel does not allege facts establishing a search within the scope of the Fourth Amendment. Dkt. # 29 at 4–6. The Court agrees.

### a.    Unreasonable Seizure

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. "For purposes of the Fourth Amendment, a seizure occurs when a law

enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). "A police officer has restrained the liberty of the citizen if, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)) (internal quotation marks omitted). However, "no seizure occurs if a suspect does not yield in response to a show of authority." *United States v. Smith*, 217 F.3d 746, 750 (9th Cir. 2000) (citing *California v. Hodari D.*, 499 U.S. 621, 625–26 (1991)).

Here, Mr. Speidel fails to allege an unreasonable seizure because he never yielded to Officer Packard and Sergeant Clifford's authority. Dkt. # 1 at 15. When Officer Packard attempted to speak with Mr. Speidel, Mr. Speidel refused, entered a nearby apartment, and never came out to speak with the officers. *Id.*

### b. Unreasonable Search

"A government agent conducts a 'search' within the meaning of the Fourth Amendment when the agent infringes 'an expectation of privacy that society is prepared to consider reasonable' or 'physically occupie[s] private property for the purpose of obtaining information.'" *United States v. Lundin*, 817 F.3d 1151, 1158 (9th Cir. 2016) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) and *United States v. Jones*, 565 U.S. 400, 404 (2012)). At the very core of the Fourth Amendment "stands the right of a [person] to retreat into his own home and there be free from unreasonable governmental intrusion." *Id.* at 1157 (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). This protection extends to the curtilage of the home, which is the "area immediately surrounding and associated with the home." *Id.* at 1158 (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984)) (internal quotation marks omitted). In addition,

1   a person "may have a legally sufficient interest in a place other than her own house so as

2   to extend Fourth Amendment protection from unreasonable searches and seizures in that

3   place." *United States v. Barajas-Avalos*, 377 F.3d 1040, 1055 (9th Cir. 2004) (quoting

4   *United States v. Broadhurst*, 805 F.2d 849, 851 (9th Cir. 1986)).  For example, "a person

5   has standing to challenge an alleged search if he or she has 'joint control and supervision'

6   of the place." *Id.*

7          "An observation of the interior of a protected structure through a window, even

8   when enhanced by a flashlight, does not constitute a search when the observation is made

9   from an open field or public place." *Id.* at 1056.  Thus, in *Delong v. City of Port Orchard*,

10  No. 06-cv-5115, 2006 WL 2290742 (W.D. Wash. Aug. 9, 2006), the court found an

11  officer did not violate the Fourth Amendment by using "a flashlight to look inside the

12  window near the front door from a place accessible by the public." *Id.*, at *8.  On the

13  other hand, in *United States v. Fuentes*, 800 F. Supp. 2d 1144 (D. Or. July 8, 2011), the

14  court found it was unreasonable to "enter the curtilage of [defendant's] home, stand

15  within inches of a window that is not associated with any point of entry, and peer into the

16  home without any particularized basis for believing exigent circumstances existed." *Id.*

17  at 1154.

18         As alleged, there are insufficient facts to suggest the officers engaged in an

19  unreasonable search.  It is unclear from the allegations how Mr. Speidel is connected with

20  the apartment he entered.  He does not allege he is the legal owner or tenant of the

21  apartment, that he has "joint control and supervision" of the place, or that he otherwise

22  has such sufficient interests in the apartment to give rise to Fourth Amendment

23  protections.[2]   Further, Mr. Speidel's bare allegation that the officers were "peering

---

25  [2] It appears from a related case that the apartment may belong to Mr. Speidel's girlfriend.

26  *Klaister v. City of Anacortes*, No. 25-cv-1459-RAJ, Dkts. # 1, 5.

1    through the windows" is insufficient.  *Id.*  It is unclear from these allegations whether the
2    officers lawfully looked into the apartment windows from a public place, or if they
3    unlawfully did so from the curtilage of the home away from any point of entry.

4        The City Defendants also argue the officers' conduct fall within the "knock and
5    talk" exception.  Dkt. # 29 at 5–6.  Under that exception, an officer may "encroach upon
6    the curtilage of a home for the purposes of asking questions of the occupants."  *Lundin*,
7    817 F.3d at 1158 (quoting *United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir.
8    2012)).  "[T]o qualify for the exception, the government must demonstrate that the
9    officers conformed to the habits of the country . . . by doing no more than any private
10   citizen might do."  *Id.* at 1159 (quoting *Florida v. Jardines*, 569 U.S. 1, 8 (2013)) (internal
11   quotation marks omitted).  "In the typical case, if the police do not have a warrant they
12   may 'approach the home by the front path, knock promptly, wait briefly to be received,
13   and then (absent invitation to linger longer) leave.'"  *Id.* (quoting *Jardines*, 569 U.S. at
14   8).  Mr. Speidel alleges the officers approached the apartment after 9 p.m., engaged in
15   "persistent knocking," "attempt[ed] to coerce a child into opening the door," and
16   remained on the premises for approximately two hours.  Dkt. # 1 at 15.  This potentially
17   exceeds the bounds of what society deems acceptable for a private citizen.  However, the
18   Court will not reach the applicability of the "knock and talk" exception because as
19   discussed above, the complaint does not sufficiently allege Mr. Speidel was entitled to
20   Fourth Amendment protections within the apartment he entered.

21   **2.    Claims Against Other Officers**

22       Mr. Speidel also sued Officers Farrell, Pleadwell, Sholten, and Hatcher because
23   they "[p]articipated in illegal search/seizure and coercive tactics" and were "[c]omplicit

ORDER - 10

1    in police practices." Dkt. # 1 at 11.[3]  Claims against these officers are dismissed because

2    the complaint does not allege what involvement they had with Mr. Speidel, if any.

3    Moreover, because Mr. Speidel does not plausibly allege an underlying illegal search or

4    seizure, he fails to allege these officers "participated" or were "complicit" in a

5    constitutional violation.

6            **3.    Claims Against Court Clerk, Prosecutor, and Public Defenders**

7            "Court clerks have absolute quasi-judicial immunity from damages for civil rights

8    violations when they perform tasks that are an integral part of the judicial process." *Acres*

9    *Bonusing, Inc. v. Marston*, 17 F.4th 901, 916 (9th Cir. 2021) (quoting *Mullis v. U.S.*

10   *Bankr. Court for Dist. Of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987)).  Similarly,

11   prosecutors are "absolutely immune from liability in § 1983 lawsuits for prosecutorial

12   actions that are intimately associated with the judicial phase of the criminal process."

13   *Lomeli v. County of San Diego*, 637 F. Supp. 3d 1046, 1076 (S.D. Cal. 2022) (quoting

14   *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009)) (internal quotation marks omitted).

15   "Absolute immunity from damages applies even when prosecutors are alleged to have

16   acted in bad faith or maliciously." *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 427

17   (1976)).  Finally, a public defender representing a client is not "a state actor 'under color

18   of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318

19   (1981).

20           Mr. Speidel sued the court clerk, prosecutor, and multiple public defenders based

21   on alleged misconduct during his October 24, 2024 hearing.  Dkt. # 1 at 15–16.

22   Specifically, Mr. Speidel alleges they either took part in, or failed to correct, the alleged

23

24   [3] Mr. Speidel also sued Police Chief Dave Floyd.  *Id.*  The Court reads Mr. Speidel's
     complaint as including Chief Floyd among the group of city officials who received Mr.
25   Speidel's written complaint and failed to take corrective action.  The claims against Chief
     Floyd are therefore addressed below.
26

alteration of court records. *Id.* He further alleges his public defender exhibited "conduct suggesting an active conflict of interest." *Id.* These allegations fundamentally arise from each of these defendants' actions while performing their duties as clerk, prosecutor, or public defender. The claims against the clerk and prosecutor are therefore precluded by immunity, and the allegations against the public defenders cannot give rise to a § 1983 claim.

### 4.    Claims Against City Officials

Next, Mr. Speidel alleges he complained about the events described above to the Anacortes mayor, chief of police, city attorney, several city council members, and other city staff, and that they each failed to take corrective action. *Id.* at 16. Claims against these individuals are dismissed because there is no constitutional requirement for public officials to respond to citizen complaints.

### 5.    Claims Against City Claims Adjuster

Mr. Speidel alleges the city claims adjuster, Ms. Ambrose, failed to reasonably investigate his claims. *Id.* at 13. Claims against Ms. Ambrose are similarly dismissed because there is no constitutional requirement for a city claims adjuster to investigate a citizen's claims.

### 6.    Claims Against City Defendants in Official Capacity

Mr. Speidel sued all defendants in both their individual and official capacities. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* To establish § 1983 liability against the government entity, the

ORDER - 12

1  plaintiff must show the entity itself is the "moving force" behind the alleged

2  constitutional deprivation. *Id.* Thus, "in an official-capacity suit the entity's 'policy or

3  custom' must have played a part in the violation of federal law." *Id.* Mr. Speidel fails to

4  plausibly state official capacity claims against the City Defendants because he does not

5  identify any policy or custom leading to the alleged constitutional violations.

### 7.    Claims under Section 1985

7  To "state a claim for conspiracy under § 1985, a plaintiff must first have a

8  cognizable claim under § 1983." *Olsen v. Idaho State Bd. Of Med.*, 363 F.3d 916, 930

9  (9th Cir. 2004). Because Mr. Speidel fails to state a claim against the City Defendants

10  under § 1983, his § 1985 claims against them are also dismissed.

### C.    Judicial Officers' Motion to Dismiss

12  Turning to the Judicial Officers' motion to dismiss, they argue the Court should

13  dismiss the claims against them under the *Rooker-Feldman* doctrine. "The *Rooker-*

14  *Feldman* doctrine recognizes that federal courts generally lack subject matter jurisdiction

15  to review state court judgments." *Fontana Empire Ctr., LLC v. City of Fontana*, 307

16  F.3d 987, 992 (9th Cir. 2002). "The doctrine also precludes a federal district court from

17  exercising jurisdiction over general constitutional challenges that are 'inextricably

18  intertwined' with claims asserted in state court." *Id.* "A claim is inextricably intertwined

19  with a state court judgment if 'the federal claim succeeds only to the extent that the state

20  court wrongly decided the issues before it' . . . or if 'the relief requested in the federal

21  action would effectively reverse the state court decision or void its ruling.'" *Id.* (quoting

22  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) and *Charchenko v. City of Stillwater*,

23  47 F.3d 981, 983 (8th Cir. 1995)).

24  Mr. Speidel's claims against Commissioner Hayne and Commissioner Eason are

25  precluded by the *Rooker-Feldman* doctrine because they in essence seek to challenge the

26

1   state court traffic infraction judgment against him.  Specifically, Mr. Speidel alleges that

2   while presiding over his traffic infraction case, Commissioner Hayne failed to "respond

3   to requests for hearing and due process oversight."  Dkt. # 1 at 12.  In addition, although

4   it is unclear how exactly Commissioner Eason was involved in Mr. Speidel's case, Mr.

5   Speidel similarly alleges that Commissioner Eason engaged in "complicity or

6   indifference in review of suppression motions."  *Id.*  These are impermissible attacks on

7   judicial decisions inextricably intertwined with the final state court judgment.

8       Mr. Speidel's allegations against Judge Nielsen conceivably do not relate to his

9   state court judgment and therefore falls outside the scope of the *Rooker-Feldman*

10  doctrine.  Mr. Speidel appears to allege that during a hearing in 2021, Judge Nielsen

11  engaged in "potential editing of the court record."  *Id.* at 13.  Nevertheless, "[i]t is well

12  established that state judges are entitled to absolute immunity for their judicial acts."

13  *Swift v. California*, 384 F.3d 1184, 1188 (9th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S.

14  547, 553–54 (1967)).  "This immunity applies even when the judge is accused of acting

15  maliciously and corruptly."  *Pierson*, 386 U.S. at 554.  Claims against Judge Nielsen stem

16  from his performance of judicial duties are therefore precluded by judicial immunity.

17      **D.    Claims Against Wagner**

18      Finally, Mr. Speidel sued Wagner, the individual who allegedly reported Mr.

19  Speidel's traffic infraction to the police.  Dkt. # 1 at 14.  To state a § 1983 claim, the

20  alleged constitutional deprivation must have been committed "under color of state law."

21  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  This requirement

22  "[e]xcludes from its reach merely private conduct, no matter how discriminatory or

23  wrongful."  *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)) (internal quotation

24  marks omitted).  Here, the allegations against Wagner implicate private conduct and does

25  not give rise to a § 1983 claim.

26

ORDER - 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**E.     Leave to Amend**

"A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). Given the liberal policy in favor of amendment, the Court finds Mr. Speidel's §§ 1983 and 1985 claims arising from an alleged unreasonable search are potentially capable of amendment. Thus, those claims against Sergeant Clifford and Officers Packard, Farrell, Pleadwell, Sholten, and Hatcher, in their individual and official capacities, are dismissed with leave to amend. However, for the reasons discussed above, Mr. Speidel may not proceed on the theory that he was subjected to an unreasonable seizure. Next, Mr. Speidel's claims against the remaining City Defendants, the Judicial Officers, and Wagner are either precluded by immunity, are based on actions that cannot give rise to § 1983 liability, or are precluded by the *Rooker-Feldman* doctrine. These claims cannot be cured and are dismissed without leave to amend.[4]

//

//

//

//

//

//

---

[4] Dismissal under the *Rooker-Feldman* doctrine is a dismissal for lack of subject matter jurisdiction, which is without prejudice. *See Kroncke v. Saldate*, 130 Fed. App'x 110, 111 (9th Cir. 2005). Therefore, claims against Commissioner Hayne and Commissioner Eason are dismissed without prejudice, although without leave to amend.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to appoint counsel, Dkt. # 36.

The Court **GRANTS** the City Defendants' motion to dismiss, Dkt. # 29.  Claims against Defendants Clifford, Packard, Farrell, Pleadwell, Sholten, and Hatcher, in their individual and official capacities,  under §§ 1983 and 1985 for unreasonable search under the Fourth Amendment are **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** within 21 days of this Order.  All claims against the remaining City Defendants are **DISMISSED WITH PREJUDICE**.

The Court **GRANTS** the Judicial Officers' motion to dismiss, Dkt. # 30.  Claims against Commissioner Hayne and Commissioner Eason are **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**.  Claims against Judge Nielsen are **DISMISSED WITH PREJUDICE**.

The Court, *sua sponte*, **DISMISSES** claims against Defendant Wagner **WITH PREJUDICE**.

Dated this 21st day of October, 2025.

The Honorable Richard A. Jones
United States District Judge